Rockingham, }
April 7, 1908. }

STATE <em>v.</em> ROBERTS <em>&amp; a.</em>

STATE <em>v.</em> MULLIGAN <em>&amp; a.</em>

Unless it is clear that a statute purporting to have been enacted for the protection of the public health and public morals has no relation to those objects, it cannot be set aside as unconstitutional and void.

The statute providing for the licensed sale of intoxicating beverages (Laws 1903, *c.* 95) is a restriction upon a traffic which was lawful at common law, was enacted for the purpose of safeguarding the public welfare, and is not void as being in conflict with the constitution.

A party cannot be heard to question the validity of a statute, or any part thereof, unless he shows that some right of his is impaired or prejudiced thereby.

DEBT, on two liquor license bonds. Trial at the October term, 1907, of the superior court before *Wallace*, C. J., who found verdicts for the state, to which the defendants excepted upon the ground that the liquor license law of the state is unconstitutional.

*Edwin G. Eastman*, attorney-general, for the state.

*Albert D. Jones, Elmer J. Smart*, and *William Wright*, for Mulligan and Roberts.

*Frink, Marvin & Batchelder*, for the Fidelity & Deposit Company of Maryland.

BINGHAM, J. These actions are debt upon bonds given to secure compliance with the conditions upon which liquor licenses were issued to the defendants under the provisions of chapter 95, Laws 1903. The justice before whom the actions were tried found verdicts for the plaintiff. The only defence set up was that chapter 95 was unconstitutional, and the defendants excepted to the verdicts upon this ground alone. In support of their exceptions, they take the position that the traffic in intoxicating liquors is productive of crime and pauperism; that it is therefore wrongful and cannot lawfully be licensed; that chapter 112 of the Public Statutes prohibits the sale of intoxicating liquor, and chapter 95, Laws 1903, licenses it; that the state cannot constitutionally prohibit and license the sale of liquor at the same time; also that it cannot license, but must prohibit, its sale, for the reason that article 82 of our constitution provides that " it shall be the duty of the legislators and magistrates, in all future periods of this government,  .  .  .  to countenance and inculcate the principles of humanity,  .  .  .  honesty,  .  .  .  sincerity, sobriety  .  .  . among the people."

The business of selling liquor is not of itself wrongful and a nuisance *per se*. *State* v. *Marston*, 64 N. H. 603; *Commonwealth* v. *Blackington*, 24 Pick. 352, 358; *Commonwealth* v. *McDonough*, 13 Allen 581, 584; 1 Bish. New. Cr. L., ss. 505, 1113; Bac. Abr., Inns; 1 Russ. Cr. 442, note *m*. It is the unrestricted and unregulated sale of it that the courts have regarded as tending to pauperism and crime. *State* v. *Gerhardt*, 145 Ind. 439; *Sopher* v. *State*, (Ind.) 81 N. E. Rep. 913; *Schwuchow* v. *Chicago*, 68 Ill. 444; Black Intox. Liq., s. 31. Its sale was lawful at common law; and if it were not for the restrictions that have been placed upon it by legislative enactments, every person in the state would be as free to engage in the business as he would be to engage in

the business of selling any other property. *Sopher* v. *State, supra,* 915, and cases there cited.

As this was the common-law right of every citizen, it is plain to be seen that statutes commonly spoken of as license laws are not, strictly speaking, grants of special privileges, but rather restrictions upon the exercise of a previously existing right. As was said in *Welch* v. *State,* 126 Ind. 71, 77 : "All laws regulating and imposing burdens on the business are prohibitory in their character. There is no difference between an absolute prohibitory law, a law providing for local option, and [a] license law, except in the extent to which they prohibit the . . . sale of intoxicating drinks. An absolute prohibitory law deprives all within its reach from engaging in the business; a local option law prohibits all within a given locality from selling within that locality; while a license law prohibits all within the state, who have not obtained a license, from engaging in the business. . . . Each is a restriction upon the common-law right of the individual citizen. The first wholly deprives him of the right, while the other two prohibit him to a limited extent."

Under our system of government, the power to restrict the sale and use of such articles as tend to injure the public health and public morals is lodged with the legislature, and is known as the police power. Const., art. 5; *State* v. *Griffin,* 69 N. H. 1. All rights of the citizen are held subject to the lawful exercise of this power; and unless a court can clearly see that a law purporting to have been enacted to protect the public health and public morals has no relation to those objects, it cannot set it aside as unconstitutional and void. *State* v. *Noyes,* 30 N. H. 279; *State* v. *Griffin, supra,* 27, 28; *State* v. *Ramseyer,* 73 N. H. 31, 36, 40; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Crowley* v. *Christensen,* 137 U. S. 86.

Acting upon the well recognized understanding that the unrestricted sale of intoxicating liquor is detrimental to the public health and morals, the state, through its legislature, has from an early day safeguarded its welfare by the enactment of laws restricting its sale, sometimes absolutely prohibiting it, at others providing for its qualified prohibition and license. From 1781 to 1849, laws were in force here which authorized the selectmen of towns to issue licenses for the sale of spirituous and intoxicating liquors, without regard to the uses to be made of them, and prohibited their sale without a license. Laws, *ed.* 1815, *p.* 372; Laws, *ed.* 1830, *p.* 482; Laws 1838, *c.* 369; R. S., *c.* 117; Laws 1849, *c.* 846. In the latter year an act was passed prohibiting the sale of " spirituous liquor or wine, mixed or otherwise, in any quantity," and requiring the selectmen to license one or more persons to sell

the same for "medicinal, mechanical, and chemical purposes, and for no other use or purpose." C. S., c. 123, ss. 5, 6; *State* v. *Perkins*, 26 N. H. 9.

In 1855 an act was passed, many of the provisions of which are now included in chapter 112, Public Statutes. In this act provision was made for the appointment of town agents authorized to sell spirituous and malt liquors for medicinal, mechanical, scientific, and sacramental purposes, and for no other use or purpose whatever; and their sale by "any person not being the agent of a town for the purpose of selling spirit" was prohibited. P. S., c. 112, s. 15. This act was amended from time to time, but its prohibitory features remained substantially the same down to 1903, when their scope was materially lessened. Laws 1903, c. 95. Since then it (P. S., c. 112) has ceased to be a law entirely prohibiting the sale of liquor as a beverage. It now prohibits its sale for such use only when sold by persons not licensed under chapter 95, Laws 1903. In this respect, as held in *State* v. *Langdon, ante*, 50, 51, chapter 95 is an amendment of chapter 112; and section 15 of the latter chapter is construed as though it read: "If any person, not being an agent of a town for the purpose of selling spirit, and not being a licensee under chapter 95, Laws 1903, shall sell or keep for sale any spirituous liquor, in any quantity, he shall be fined," etc. The result is that chapter 112, since the enactment of chapter 95, has ceased to be an absolute prohibitory law, and that the two statutes, taken together, constitute a license law with local option provisions, authorizing the cities and towns of the state to decide by popular vote whether licenses of the second, third, fourth, seventh, eighth, and ninth classes shall be issued within their limits.

As the purpose of these laws was to safeguard the health and morals of the citizens of the state, and as they tend to accomplish that purpose, it is clear that the legislature was acting within its constitutional powers in enacting them. Its power to regulate, restrain, and prohibit whatever is injurious to the public health and morals is universally recognized, and nowhere more distinctly than in this state. *Pierce* v. *State*, 13 N. H. 536; *Lewis* v. *Welch*, 14 N. H. 294; *State* v. *Moore*, 14 N. H. 451; *Priest* v. *Pinkham*, 18 N. H. 520, 524; *Opinion of the Justices*, 25 N. H. 537; *State* v. *Clark*, 28 N. H. 176; *State* v. *Noyes*, 30 N. H. 279; *State* v. *Holmes*, 38 N. H. 225, 228; *State* v. *Freeman*, 38 N. H. 426; *State* v. *Cate*, 58 N. H. 240; *State* v. *Express Co.*, 60 N. H. 219, 260, 261; *State* v. *White*, 64 N. H. 48; *State* v. *Campbell*, 64 N. H. 402; *State* v. *Marshall*, 64 N. H. 549; *State* v. *Griffin*, 69 N. H. 1; *Mugler* v. *Kansas*, 123 U. S. 623. Whether the public good requires that the sale of liquor as a beverage should be

entirely or only partially prohibited is for the legislature to determine, in the exercise of its discretion. The court does not inquire into the expediency or wisdom of such legislation. *State* v. *Griffin, supra; State* v. *Ramseyer, supra,* 40.

The defendants further contend that the provisions of section 28, chapter 95, Laws 1903, as amended by section 17, chapter 49, Laws 1905, of chapter 121, Laws 1903, and of section 9, chapter 95, Laws 1903, as amended by section 6, chapter 49, Laws 1905, are unconstitutional, as being a delegation of legislative power and authorizing the commissioners to make regulations which hold equal place with the express provisions of the act, and as imposing the same penalties for their violation as are imposed for violation of its express provisions. These objections are not well taken. It does not appear that the licenses issued to the defendants, to secure a compliance with the conditions of which the bonds in suit were given, belonged to any of the classes of licenses specified in these provisions of the statute, or that these suits were based upon breaches of any condition imposed by the commissioners under the powers there conferred. A party will not be heard to question the validity of a law, or of any part of it, unless he shows that some right of his is impaired or prejudiced thereby. It is therefore unnecessary to consider the argument of counsel as to these matters.

*Exceptions overruled.*

All concurred.